UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES                                                            Plaintiff

v.                                               Criminal Action No. 3:20-cr-70-RGJ

JEFFREY OWEN                                                            Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

This case comes before the Court on a motion *in limine* and a motion to exclude by the United States.  [DE 97; DE 98].  Briefing is complete and the matters are ripe.  [DE 111; DE 107].  At the pretrial conference, the Court **DENIED** the United States' motion to exclude on the record.  [DE 98].  For the reasons below the United States' motion *in limine* [DE 97] is **GRANTED IN PART and DENIED IN PART**.

## I.      BACKGROUND

Defendant Jeffrey Owen ("Owen") was indicted[1], along with Kimberly Owen, his spouse and co-defendant[2] (collectively, "Defendants") on nine counts of Conspiracy to Commit Bank Fraud, Bank Fraud, Bankruptcy Fraud, Wire Fraud, and Money Laundering.  [DE 30].  The charges arise from Owen's commercial real estate financing activities in connection with his childcare businesses.  [*Id.*]

   A.   <u>Counts 1 and 2: Conspiracy to Commit Bank Fraud; Bank Fraud as to Financial Institutions #1, #2, and #3</u>

---

[1] The first indictment, returned in July 2020, charged Owen with one count of Conspiracy to Commit Bank Fraud. [DE 1, Indictment].  Additional charges were added via a superseding indictment in February 2021. [DE 30, Superseding Indictment].

[2] Kimberly Owen has since pleaded guilty to a superseding information and is not scheduled for trial.  [DE 128; DE 131].

1

From May 2013 through March 2014, Owen submitted the following loan applications to three different financial institutions:

| Financial Institution | Date of Closing | Property Financed | Amount of Loan |
|---|---|---|---|
| Financial Institution #1 | May 24, 2013 | 66 Old Brunnerstown Road Shelbyville, KY | $465,000 |
| Financial Institution #2 | August 23, 2013 | 4200 Wallingford Lane & 8019 Beulah Church Road Louisville, KY | $594,000 |
| Financial Institution #2 | December 31, 2013 | 7602 Third Street Louisville, KY | $432,000 |
| Financial Institution #3 | March 27, 2014 | 9811 Merioneth Drive Louisville, KY | $144,000 |

[DE 30 at 98]. These applications were submitted in the name of Kimberly Owen, CD Management of Shelbyville ("CD Shelbyville"), and CD Management ("CD") to finance real estate purchases. [*Id*.]. At the time, Kimberly Owen was the listed owner of CD Shelbyville and CD. [*Id*. at 98]. It is alleged that Owen chose not to submit the applications under his own name because he has a history of liabilities and legal judgments that would have prevented him from obtaining the financing. [*Id*.]. After the loans were secured, Owen assumed the role of manager, president, and registered agent of CD Shelbyville and CD. [*Id*. at 99].

The personal financial statements submitted in conjunction with these applications contained "material omissions and misrepresentations" about Kimberly Owen's financial and legal history. [*Id*. at 98]. For example, the applications failed to disclose various unsatisfied judgments and liens against her, the fact that she was a guarantor or co-signer on other outstanding loans, an outstanding promissory note she executed to CD, and an outstanding tax debt. [*Id*. at 99-101]. The omitted judgments included one arising from a lawsuit in a Fayette Circuit Court case, *DCR Mortgage III SUB I, LLC v. Kimberly Owen*, Fayette Circuit Court (Kentucky), 06-CI-1953 ("Fayette Judgment"), which is also the subject of Counts 7, 8, and 10. [*Id*. at 99].

2

B.      Counts 3 and 4: Conspiracy to Commit Bank Fraud; Bank Fraud as to Financial
        Institution #2

Less than a year after it was secured, one of the loans financed by Financial Institution #2 fell into delinquency. [*Id*. at 103]. The lender filed a civil complaint against Kimberly Owen and CD Shelbyville. [*Id*.]. Foreclosure actions were then initiated on the properties at 8019 Beulah Church Road, 7602 Third Street Road, and 4200 Wallingford Lane. [*Id*.]. Financial Institution #2 was unable to collect on the debts allegedly because Defendants had taken the following actions, which form the basis for Counts 3 and 4:

1.  First, Kimberly Owen garnished her own wages to prevent creditors from garnishing them in the future. [*Id*. at 103]. In 2009, Defendants executed a promissory note to CD, agreeing to pay $865,000 with an annual interest rate of 8%. [*Id*.; DE 97 at 578]. In 2014, Defendants filed a complaint on behalf of CD against Kimberly Owen to collect on the debt in *CD Management LLC v. Kim Owen*, Jefferson Circuit Court (Kentucky), 14-CI-3265. [DE 30 at 103]. The same day, Defendants filed an agreed judgment for $1,176,822.95 which Kimberly Owen signed on behalf of both the plaintiff, as manager of CD, and the defendant in the case. [*Id*.]. The judgment was used to obtain an ongoing garnishment order on Kimberly Owen's wages. [*Id*.]. When Financial Institution #2 later attempted to garnish her wages as payment on the overdue loans, the preexisting garnishment prevented recovery. [*Id*.]. Additionally, the United States alleges the outstanding debt arising from the promissory note was not disclosed to the victim financial institutions when Defendants applied for the four real estate loans identified above. [DE 97 at 578].

2.  In late 2015, Owen made false statements and provided fraudulent invoices to Financial Institution #2 about work done to the financed properties in order to misappropriate funds from insurance claim payouts.  [DE 30 at 103–04].

3.  Financial Institution #2 attempted to satisfy the defaulted loan by garnishing stock shares Kimberly Owen listed as assets on the loan application.  [*Id*. at 104].  It is alleged that Defendants falsely represented that the shares had been moved to a family trust, when they had not and while some of the shares were still being held as collateral by another bank.  [*Id*.].

4.  In January 2019, Owen filed a Chapter 11 bankruptcy petition on behalf of CD Shelbyville as its "Manager" in order to delay the foreclosure proceedings initiated by Financial Institution #2 on the financed properties.[3]  [*Id*.].  Owen signed the bankruptcy petition affirming that its contents were accurate under the penalty of perjury.  [*Id*.].  Yet the petition listed two inaccurate unsecured claims, one by Wintersteen General Contracting ("Wintersteen") and one by Owen himself.  [*Id*.].  CD Shelbyville did not owe any debt to Wintersteen, and the address listed on the petition did not belong to the company, but was the address of Owen's brother.  [*Id*. at 105].  Owen's own claim in the amount of $80,000 was improper because the petition excludes claims from "insiders."  [*Id*. at 105].  Both claims made it appear as though CD Shelbyville had multiple creditors, which triggered the proceeding in bankruptcy court rather than allowing resolution through Financial Institution #2's foreclosure actions.  [*Id*.].  These misrepresentations also form the basis for Count 6, Bankruptcy Fraud.  [*Id*. at 107].

---

[3] The case was filed in the Bankruptcy Court for the Western District of Kentucky under *In re CD Management of Shelbyville, Inc.*, No. 3:19-bk-30145-JAL.

C.     Counts 5 and 6: Bankruptcy Fraud as to Owen's actions when CD Management, LLC and CD Management of Shelbyville, Inc. defaulted on all four of the commercial real estate loans received in 2013 and 2014

Between 2018 and 2019 Owen made fraudulent misrepresentations in two pending bankruptcy actions, one involving CD and the other involving CD Shelbyville. [*Id.* at 106–07]. In the first case, *In re CD Management, LLC*, No. 18-32078-THF in the United States Bankruptcy Court for the Western District of Kentucky, Owen fraudulently stated that Wintersteen had an unsecured claim in the amount of $14,250. [*Id.* at 106]. He also listed his brother's address instead of Wintersteen's business address. [*Id.*]. Owen took the same action in the case involving CD Shelbyville, as described above. [*Id.* at 107].

D.     Counts 7, 8, and 10: Wire Fraud and Money Laundering as to Defendants' fraudulent conduct in evading collections on the debt in *DCR Mortg. III SUB I, LLC v. Kimberly Owen, et al.*, Case No. 06-CI-1953, in Fayette Circuit Court

In 2009, summary judgment was entered against Defendants after a 2003 loan for one of Owen's entities, O.M. Enterprises of Louisville, Inc, went into default. [DE 97 at 581]. The holder of the debt in that case, DCR Mortgage III Sub I, LLC ("DCR"), initiated collection proceedings. [*Id.*]. DCR was unable to collect on the debt because Defendants allegedly took following actions, which form the basis of Counts 7, 8, and 10:

1.   As explained above, Defendants had garnished Kimberly Owen's wages to prevent creditors from doing so.  *See supra*, Part I.B.1; [DE 30 at 108–09]. This garnishment prevented DCR from collecting on the debt by garnishing Kimberly Owen's wages. [*Id.* at 109].

2.   Defendants made materially false statements during DCR's deposition in connection with the collection proceedings. [*Id.*]. These statements included:

"that neither JEFFREY R. OWEN nor KIMBERLY D. OWEN had assets or checking accounts in their names, that KIMBERLY D. OWEN worked at a private dentistry practice

incorporated under her name, that KIMBERLY D. OWEN had no stock or assets in her name other than her residence, and that KIMBERLY D. OWEN's and JEFFREY R. OWEN's vehicles were owned by Full Spec Roofing and JEFFREY R. OWEN's brother allowed them use of the vehicles because KIMBERLY D. OWEN and JEFFREY R. OWEN provided services in kind. Additionally, JEFFREY R. OWEN implied third parties related to "M&K" had garnished KIMBERLY D. OWEN's wages when JEFFREY R. OWEN and KIMBERLY D. OWEN garnished KIMBERLY D. OWEN's wages on July 17, 2014, the day after the deposition."

[*Id.* (alteration in original)]. Additionally, Kimberly Owen stated that her only income was through Kimberly Owen, DMD, Inc., that she had no knowledge of CD or CD Shelbyville, and that she was not aware she owned any stocks. [*Id.* at 110]. Defendants also falsely stated, through counsel, that Owen's brother was the owner of CD and CD Shelbyville, that Kimberly Owen did not have an operation role in either entity, that Owen's role in the entities was limited to leasing buildings on his brother's behalf, that Owen's brother or one of his companies paid for Defendants' children's school tuition, and that Defendants had no bank accounts other than those previously disclosed to DCR. [*Id.*].

3. To guard funds from collection by DCR, Defendants made the following wire transactions which form the basis of the wire fraud charges in Counts 7 and 8:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 7 | On or about November 4, 2016 | Check #1098, from a CD Management of Shelbyville, Inc. account, in the amount of $8,980.00, endorsed by **KIMBERLY D. OWEN** and made payable to Kim Owen DMD, Inc., was deposited into a Kim Owen DMD, Inc. Republic Bank account ending in 7436, causing an interstate wire communication from Louisville, Kentucky, to outside of Kentucky |
| 8 | On or about August 28, 2018 | Check #1242, from a CD Management of Shelbyville, Inc. account, in the amount of $5,000.00, endorsed by **JEFFREY R. OWEN** and made payable to Kim Owen DMD, was deposited into a Kim Owen DMD, Inc. Republic Bank account ending in 7436, causing an interstate wire communication from Louisville, Kentucky, to outside of Kentucky |

[*Id.* at 111].

6

4. Owen also deposited $2,180 via check number 1223 into Republic Bank account ending in 7436 to conceal "the nature, source, ownership, and control of the proceeds." [*Id*. at 112]. This transfer forms the basis for the money laundering charge in Count 10. [*Id*.].

## II.    STANDARDS

The United States seeks to introduce five items of evidence in its case in chief which are not charged in the superseding indictment. [DE 97 at 575]. The United States asserts that the evidence is admissible as direct proof, *res gestae*, inextricably intertwined evidence, or as other acts evidence under Rule 404(b). [*Id*

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* pursuant to their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). The "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002) (citing *Luce,* 469 U.S. at 41 n. 4). This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 713 F.2d at 1239). Thus, even where a motion *in limine* is denied, the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239). Likewise, the Court has discretion to alter or amend a prior *in limine* ruling at trial. *Luce*, 469 U.S. at 41–42.

A.     Character Evidence

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).   Yet Rule 404(b)(2) allows the introduction of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.  404(b)(2). This list is inclusive rather than exclusive.  *See United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991) ("The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes"). In a criminal case, prosecutors must provide reasonable notice of any 404(b) evidence they intend to use at trial.  Fed. R. Evid. 404(b)(3).

Courts determine the admissibility of evidence under Rule 404(b) under a three-step process: "[T]he court must first consider whether there is a sufficient factual basis that the act occurred; second, whether the act is being offered for an appropriate reason; and third, whether the probative value of the evidence is substantially outweighed by the unfair prejudicial impact of its use at trial." *United States v. Gibbs*, 797 F.3d 416, 425 (6th Cir. 2015) (citing *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)).  Owen has conceded that there is sufficient factual basis for each piece of evidence offered by the United States and that proper notice was given under Rule 404(b).  [DE 111 at 741].

B.     *Res Gestae* or Intrinsic Evidence

Also known as "background" or "extrinsic" evidence, *res gestae* is an exception to the Rule 404(b) bar on other act evidence.  *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001). "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the

charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Gibbs*, 797 F.3d at 423 (quoting *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000)).  The Sixth Circuit recognizes "severe limitations as to temporal proximity, causal relationship, or spatial connections among the other acts and the charged offense" so as to not run afoul of the goals of Rule 404(b). *United States v. Sadler*, 24 F.4th 515, 555 (6th Cir. 2022) (internal quotations and citations omitted), *cert. denied sub nom. Tempo v. United States*, 143 S. Ct. 169 (2022).

Likewise, Rule 404(b) "is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Adams*, 722 F.3d 788, 822 (6th Cir. 2013) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)).  Intrinsic evidence "tends to logically prove an element of the crime charged." *United States v. Peete*, 781 F. App'x 427 (6th Cir. 2019) (quoting *United States v. Till*, 434 F.3d 880, 883 (6th Cir. 2006)).  To be "intrinsic" an act must be "part of single criminal episode" with the charged conduct.  *Adams*, 722 F.3d at 822.  This is related to, but distinct from *res gestae* evidence, which "occurred at different times under different circumstances from the offense charged."  *Sadler*, 24 F.4th at 545 (quoting *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015)).

The categories of *res gestae* and intrinsic evidence are often merged and confused.  The Sixth Circuit has itself recognized that "[w]e have not always been clear when distinguishing between *res gestae* and intrinsic evidence." *Id*. at 545, n. 11.  Regardless of the category into which background evidence falls, it may nonetheless be inadmissible if its probative value is substantially outweighed by a danger of unfair prejudice.  *Churn*, 800 F.3d at 779.

C.    Rule 403 Balancing

The Court may exclude otherwise relevant evidence "if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added); *see Roche Diagnostics Corp. v. Shaya*, No. 19-10264, 2023 WL 4198866, at *7 (E.D. Mich. June 27, 2023) ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission.") (citing *United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J. concurring)).

### III.   DISCUSSION

A.   <u>Evidence of Tax Debt and Tax Judgment Against and Criminal Charges of Defendant Jeffrey Owen that Prevented Him from Acting as a Guarantor on Loans</u>

In 2009, in a different case, this District Court found that Owen owed $7,379,887.19 plus interest in unpaid federal income taxes and trust fund recovery penalties. [DE 97 at 582]. The United States was unable to collect on the unpaid tax balance and as a result filed a complaint seeking a permanent injunction requiring Owen to file timely returns and payments. [*Id.*]. The Court entered an agreed order requiring Owen to report to the IRS his involvement in any new or previously undisclosed business entity. [*Id.* at 583]. In the 2014 DCR deposition, Owen claimed that he did not place any assets in his name because of this IRS judgment. [*Id.*].

Owen was also indicted in 2010 by a Jefferson County grand jury on thirty-six counts of felony theft arising from his failure to turn over state payroll taxes that had been withheld from employees' paychecks at his childcare centers. [*Id.* at 583]. Owen pleaded guilty to all counts in 2011, received felony diversion, and agreed to pay $168,444.05 in restitution. [*Id.*]. He received early termination of his diversion in 2017 after he paid a final lump sum of $50,000 towards restitution. [*Id.*].

Owen was also indicted in 2013 by a Bullitt County grand jury on felony charges stemming from defrauding the Child Care Assistance Program. [*Id*.]. He pleaded guilty to a misdemeanor offense and was sentenced to two years of probation and $7,500 in restitution with expungement available after successful completion of the terms. [*Id*. at 584]. The case was expunged upon his completion of the plea conditions. [*Id*.].

The United States asserts that this evidence is necessary to explain why Owen named his wife as the head of CD and CD Shelbyville and why, as charged in counts 1 and 2, he had her apply for the loans rather than apply under his own name. [*Id*. at 590]. Owen argues that the acts should be excluded because they are factually distinct and occurred well before the charged conduct in this case. [DE 111 at 738–39].

First, the Court considers whether the other acts evidence may be admissible under the *res gestae* exception to 404(b). *See Everett*, 270 F.3d at 992 ("This court has held that Rule 404(b) is not applicable where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged.") (quoting *Barnes*, 49 F.3d at 1149)). Each judgment the United States seeks to introduce shares temporal proximity with the charged offense. *See Sadler*, 24 F.4th at 555 (describing temporal proximity as a common requirement for *res gestae* evidence). The criminal acts themselves may have occurred earlier, but their legal consequences were playing out at the same time as the charged conduct. [DE 97 at 583–84]. At the time of the 2013 and 2014 loan applications, Owen was obligated to report his business involvement to the IRS and was actively paying restitution as part of his diversion agreement in the Jefferson County case. [DE 97 at 583]. And he pleaded guilty to the Bullitt County charge in October 2013—between submitting the second and third loan applications described in the indictment. [*Id*.].

The Sixth Circuit has affirmed the admission of similar prior acts as inextricably intertwined evidence in a fraud case. *United States v. Donohue*, 726 F. App'x 333, 344 (6th Cir. 2018). In *Donohue*, the lower court admitted evidence of a co-defendant's prior SEC action, which had resulted in a judgment and "an injunction prohibiting him from holding any officer or director position in a publicly traded company." *Id*. at 338. The Court affirmed the admission of the prior act evidence, reasoning that the SEC obligations were still active at the time of the alleged scheme to defraud, and the judgment "was 'inextricably intertwined' insofar as it served as a 'prelude' to the charged money laundering, 'completing the story' thereof." *Id*. at 344 (internal citations omitted). Since *Donohue*, other courts have found that similar prior acts are admissible as background evidence. *See United States v. Rodgers*, No. 3:17-CR-0016, 2018 WL 3616925, at *2 (E.D. Ky. July 27, 2018) (holding prior securities charges which were ongoing during the time of the charged fraud were admissible as background evidence).

Likewise, Owen was under a continuing obligation to report to the IRS his involvement with any new business entity. [DE 97 at 583]. He cited this obligation as the reason he does not put assets in his own name. [*Id*.]. Further, he was paying restitution in Jefferson County and facing an additional restitution obligation as part of his conviction in Bullitt County. [*Id*. at 583–84]. Thus, the evidence is temporally connected to and "completes the story of the charged offense" by explaining what Owen sought to hide from the lenders in this case. *Gibbs*, 797 F.3d at 423 (quoting *Hardy*, 228 F.3d at 750). Because the evidence falls into an exception, the Court need not determine if it would also be admissible for a proper purpose under 404(b). *See* Fed. R. Evid. 404(b)(2).

Background evidence must also not produce prejudice which substantially outweighs its probative value. Fed. R. Evid. 403; *Churn*, 800 F.3d at 779. Whenever prior acts evidence is

introduced, "regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again." *United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008) (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994) (internal quotations omitted)). This is especially true when, as here, the prior acts are felony charges. *See id.* ("Evidence of a defendant's prior crimes 'unquestionably has a powerful and prejudicial impact.'" (quoting *Johnson*, 27 F.3d at 1193)). Owen's tax judgment— while it does not carry the stigma of a felony designation—is for such a high amount that it is also likely to produce prejudice.

The Court must compare the prejudice inherent in each piece of evidence to its corresponding probative value. Fed. R. Evid. 403. Owen's tax judgment is highly probative of his failure to disclose material facts to the financial institutions in this case. Without knowing about his inability to secure financing, his involvement in the fraudulent loan scheme appears attenuated at best. Because Kimberly Owen is the one who applied for the loans, jurors would be left to wonder what, if anything, Owen himself misrepresented or omitted. Defendants are not entitled to such a "'sanitized' recounting of the facts." *Gibbs*, 797 F.3d at 424 (internal citation omitted). The judgment's probative value is further increased because Owen was under the IRS reporting obligation at the time of the fraudulent loan applications. [DE 97 at 583]. Accordingly, the Court cannot say that the prejudice created by admission of the tax judgment *substantially* outweighs the evidence's probative value. Fed. R. Evid. 403. In an effort to minimize prejudice to Owen, the Court will instruct the jury on the proper uses of prior act evidence.[4] *See United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("The magnitude of that risk might

---

[4] Sixth Cir. Pattern Jury Instr. 7.13 (2023)(Other Acts of Defendant).

well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose.").

As for Owens's two convictions, while a close call, Rule 403 balancing points towards exclusion. The convictions serve only to show why Owen would have been unable to secure financing under his own name.[5] [DE 97 at 590]. This probative value is lessened considering the tax judgment admitted for the same purpose. And the prejudicial effect of the convictions is substantially higher than that of the tax judgment. On balance, the prejudicial effect of admitting the two recent convictions—one being for a felony—substantially outweighs their demonstrated probative value. Thus, the United States' motion is denied as to this evidence.

B.    Evidence of Judgments, Litigation, and Debts of Kimberly Owen that Were Omitted from the Loan Applications

The United States alleges that Defendants had various outstanding debts at the time of the loan applications which gave rise to the charges in this case. First, Defendants were ordered to pay DCR $80,000 plus interest in the Fayette Judgment. [*Id*. at 585]. This debt was sold to a third party and is outstanding. [*Id*.].

Second, Defendants, along with one of Owen's entities, Windham Investments, Inc. ("Windham"), were sued by a creditor, S.W., for $200,000 plus interest and attorneys' fees.[6] [*Id*.]. The judgment was satisfied in 2016 after Defendants paid in monthly installments. [*Id*.].

Third, Kimberly Owen signed as a guarantor for a $200,000 commercial real estate loan from Allison Mortgage Loan Servicing Corp. ("Allison Mortgage") to Windham. [*Id*.]. Once

---

[5] This is true regardless of whether the evidence is admitted as direct proof, *res gesta*e, or under 404(b).
[6] *S.W. v. Jeffrey Owen, et al.*, in Montgomery County, Tennessee, Circuit Court Case No. 63-cc1-2008-cv-1253.

Windham defaulted on the loan, Allison Mortgage sued to collect on it.[7] [*Id*.].  In 2016, the action was dismissed as settled.  [*Id*.].

Fourth, Kimberly Owen filed a petition in the United States Tax Court contesting deficiencies that the IRS has assessed for tax years 2010 and 2011: $47,750 and $97,214, respectively.  [*Id*.].  In 2016, the court entered a stipulated order finding that Kimberly Owen owed an additional $34,529 for tax year 2010 and an additional $64,028 for tax year 2011.  [*Id*. at 586].

Fifth, Kimberly Owen had several outstanding judgements for smaller amounts in "*Louisville/Jefferson County Metro Revenue Commission v. Kimberly Owen* (Jefferson Circuit Court, 04-CI-354 and 06-CI-1989), *Capital One Bank v. Kimberly Owen* (Jefferson Circuit Court, 08-CI-4926), *Kentucky Investors Trust v. Kimberly Owen* (Jefferson Circuit Court, 09-CI-10122), and others." [*Id*.].  Defendants also claim that Kimberly Owen signed a promissory note to CD for $865,000, as referenced above.  *See supra*, Part I.B.1; [*Id*.].

Collectively, the United States alleges Defendants' omission of these uncharged debts on the loan applications to Financial Institutions #1, #2, and #3 is directly probative of the charges in Counts 1 through 4.  [*Id*. at 591].

Owen does not object to the introduction of this evidence.  [DE 111].  Without objection, the United States' motion to introduce it will be granted.  Even if Owen had objected, the evidence would still be admissible.

First, the omission of the judgments and debts is conduct charged in the superseding indictment.  [DE 30 at 99].  The offense of bank fraud requires a showing that the Defendants sought to obtain money from a financial institution "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.  Thus, proving the existence of the undisclosed

---

[7] *Allison Mortg. Loan Servicing Corp. v. Kimberly Owen and Windham Invs., Inc.*, in Jefferson Circuit Court, Case No. 14-CI-3265.

judgments and debts is direct proof of Defendants' fraudulent representations to the financial institutions.

The Sixth Circuit has held that proof of such omissions is admissible as direct proof of a fraud offense. *Donohue*, 726 F. App'x at 341 (citing *United States v. Stitsky*, 536 F. App'x. 98 (2d Cir. 2013)).  In *Donohue*, a defendant challenged the admission of his co-defendant's prior convictions as "direct evidence of a material omission for purposes of the fraud charges" against them at trial. *Id*. at 341.  The Sixth Circuit, reviewing for plain error, affirmed the lower court's decision to admit the evidence, reasoning that the co-defendant's failure to disclose his prior convictions in his company's prospectuses amounted to a fraudulent omission of a material fact—an element of the charged offense. *Id*. at 343.

Kimberly Owen's omitted judgments and debts are likewise "direct evidence of a material omission for purposes of the fraud charges."  *Id*. at 341.  They are also admissible as background evidence, since they "complete the story" of the offense—one cannot be found to have omitted something that does not exist. *Id*. at 344 (internal quotations omitted).

Rule 403 also weighs in favor of admission.  First, most of the debts belong exclusively to Kimberly Owen, who is not going to trial in this matter.  Owen is unlikely to suffer substantial prejudice from disclosure of debts which do not belong to him.  Balanced against their substantial probative value in proving an element of the offense, Rule 403 counsels for admission.  Thus, the United States' motion to introduce this evidence is granted.

C.    Evidence of Other Loans for Which Kimberly Owen Applied in 2016

In 2016, Kimberly Owen financed the purchase of additional shares in her employer, Mortenson Family Dental ("Mortenson").  [*Id*. at 586].  She submitted a signed personal financial statement in December 2015 which listed $619,000 in assets, $320,000 in annual income, and

$256,000 in total liabilities, including $160,000 in secured bank loans, $96,000 in other loans financing the purchase of Mortenson stock, and $1,000 in credit card debt.  [*Id*.].

Later that year, Defendants applied to refinance an existing loan.  [*Id*.].  One of Owen's entities, CCPG, Inc. ("CCPG") applied for the loan from Heritage Bank while Kimberly Owen served as a guarantor.  [*Id*.].  The personal financial statement submitted with the application listed Kimberly Owen's total liabilities as $180,000, including $45,000 in notes payable, $130,000 in loans pledged with securities, and $5,000 in other liabilities.  [*Id*. at 587].  The United States asserts that "[n]either personal financial statement for [the] 2016 loans discloses any of the liabilities that were omitted from the personal financial statements for the four commercial real estate loans applied for in 2013 and 2014."  [*Id*.].

The United States seeks to offer evidence of Defendants' alleged inflation of their net worth in 2016 to show that statements made to DCR in 2014 about their net worth were false.  [DE 97 at 591].  This is not proper background evidence, as the 2016 loans from other institutions and lack a temporal or causal connection to the 2013 loans or the 2014 statements.  In *Gibbs*, the Sixth Circuit held that evidence that the defendant was engaged in a shooting one month after the shooting for which he was charged was not *res gestae* evidence because it was "not at all necessary to determine whether Defendant possessed ammunition at that earlier time." *Gibbs*, 797 F.3d at 423.  Similarly, evidence of Defendants' 2016 disclosures is unnecessary to complete the picture of the misrepresentations made in 2014. *Id*. (quoting *Hardy*, 228 F.3d at 750).

The United States also points to the similarities between the misrepresentations on the 2016 applications and those on the 2013 and 2014 applications, which form the basis of Counts 1 and 2. [DE 97 at 591 ("the similarity between the representations . . . is direct evidence there was no intervening event that would provide an innocent explanation for the difference between what the

17

defendants reported on the loan applications in 2013 and 2014 and what they testified to in depositions later in 2014")].  Defendants' financial disclosures in 2016 are not probative of what their financial picture was two years earlier.  Instead, the similarity between the loan applications is likely to produce an inference that because Defendants made misrepresentations in 2016, they must also have made them in 2014.  This is the exact inference that Rule 404 guards against.  Fed. R. Evid.  404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Even if the loans could be offered for a proper purpose, Rule 403 would bar admission. The evidence is highly prejudicial, as it amounts to an additional uncharged count of bank fraud. By contrast, its probative value is low.  The United States seeks to introduce it to show that the statements Defendants made about their financial position in the 2014 DCR depositions were false. [DE 97 at 591].  However, the applications were submitted two years after the DCR depositions, by which time Defendants' financial circumstances were likely to have shifted.  [*Id.*].  Thus, the United States' motion to introduce this evidence is denied.

### D.   Evidence of CCPG Inc.'s Bankruptcy Filing in 2018

In July 2018, Heritage Bank notified Defendants that the loan to CCPG was in default and began foreclosure proceedings.  [*Id.*].  In November 2018, Owen filed a bankruptcy petition on behalf of CCPG. [*Id.*].  The application listed Bullitt County Properties, LLC ("Bullitt County Properties") as a creditor in the amount of $1,498,000.  [*Id.*].  The address listed for Bullitt County Properties is the address of Owen's brother.  [*Id.*].  Further, Owen himself is listed as the entity's manager and registered agent.  [*Id.*].  The bankruptcy was later dismissed on a motion by the United States Trustee.  [*Id.*].

The United States seeks to admit evidence of this additional fraudulent bankruptcy petition as "proof of the fraudulent nature of the claims in the CD Management of Shelbyville, Inc. and the CD Management, LLC petitions" [DE 97 at 592] and to show "Owen used the same tactics." [*Id.* at 597]. These are not proper purposes under 404(b). *Gibbs*, 797 F.3d at 425. The petition, which includes the same fraudulent information as the petitions included in the indictment, serves only to show that because Owen lied about a creditor in 2018 and 2019, it is likely that he used the same lie in 2013. Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The evidence may not be offered for the non-propensity purpose of proving identity through modus operandi because Owen's identity is not at issue in this case. *See United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) ("Prior acts or crimes can be admitted to show identity, provided they are of sufficient distinctive similarity with the charges in the indictment to create a pattern or modus operandi. (internal quotations and citation omitted)).

Even if the evidence were offered for a proper purpose, its probative value would be substantially outweighed by what amounts to an additional, uncharged count of bankruptcy fraud. Thus, the United States' motion to admit the evidence is denied.

E.    <u>Evidence of Defendant Jeffrey Owen's Use of Deceased Jimmy Anderkin's Identity</u>

Jimmy Anderkin ("Anderkin"), who died in June 2012, did various odd jobs for Owen. [*Id.*]. On August 6, 2013, someone created the email address "monterayrehab@aol.com" and listed Anderkin as the owner. [*Id.* at 588]. On August 7, 2013, Owen emailed Acuity Insurance about claims on the financed properties, "stating he 'included Jim Anderkin in this e-mail string,' and forwarding an email from 'Jim Anderkin.'" [*Id.*]. In 2015, the registered agent for Fullspec

Roofing and Repair, Inc. was changed from Owen to Anderkin.  [*Id*.].  Owen later acknowledged

that Anderkin had died during an examination under oath in 2016.  [*Id*.].

At the pretrial conference, the United States clarified that Owen represented Anderkin to

Financial Institution #2 as part of the fraudulent scheme alleged in Counts 3 and 4.  The offense

of bank fraud requires a showing that Owen sought to obtain money from a financial institution

"by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.  Thus,

proving the existence of a false representation is direct proof of an element of the offense.  The

Sixth Circuit has held that proof of such material misrepresentation is admissible as direct proof

of a fraud offense.  *See Donohue*, 726 F. App'x at 341 (holding proof of co-defendant's omitted

prior conviction was admissible as direct proof of fraud offense).   A misrepresentation is

considered "material" when it could influence the decision of a "person[] of ordinary prudence

and comprehension." *United States v. Jamieson*, 427 F.3d 394, 415–16 (6th Cir. 2005).  The fact

that one of the references it was presented did not exist was likely to influence the decision of

Financial Institution #2.  As for Rule 403, evidence of Owen's use of a deceased person's identity

is likely to produce prejudice.  But that prejudice does not substantially outweigh the evidence's

probative value as to an element of the offense.  The United States' motion is granted as to this

evidence.

## IV.    CONCLUSION

For these reasons, **IT IS ORDERED** that:

1) United States' motion *in limine* to admit evidence as direct proof, *res gestae*,

   inextricably intertwined, or 404(b) evidence [DE 97] is **GRANTED in part**

   **and DENIED in part.**

2) United States' motion to exclude [DE 98] is **DENIED** as moot.

February 27, 2024

Rebecca Grady Jennings, District Judge

United States District Court

cc:      Counsel of record